# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AUGUST CABRERA, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 19-3835 (JDB) |
| ISLAMIC REPUBLIC OF IRAN, | |
| Defendant. | |
| MARK ZAMBON, et al., | |
| Plaintiffs, | |
| v. | |
| ISLAMIC REPUBLIC OF IRAN, | Civil Action No. 18-2065 (JDB) |
| Defendant. | |

## MEMORANDUM OPINION

Between 2006 and 2019, a terrorist syndicate comprising, among other groups, al-Qaeda, the Taliban, and the Haqqani Network (the "Syndicate") perpetrated numerous terrorist attacks against American servicemembers and civilians in Afghanistan. Victims of those attacks and their family members brought these coordinated suits against the Islamic Republic of Iran under the terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A, alleging that Iran provided material support for extrajudicial killings to the Syndicate. The Court now addresses the claims of 125 of those plaintiffs, spanning thirty-three separate attacks ("Tranche 1 Broom plaintiffs").

## I.      Background

On July 19, 2022, the Court issued a Memorandum Opinion setting out a framework for analyzing the attacks at issue in <u>Cabrera</u> and <u>Zambon</u>, as well as plaintiffs' related claims. <u>See Cabrera</u>

v. Islamic Republic of Iran ("Cabrera I"), Civ. A. No. 19-3835 (JDB), 2022 WL 2817730 (D.D.C. July 19, 2022).  In laying out this framework, the Court analyzed the claims of twenty-three plaintiffs relating to eleven attacks ("bellwether plaintiffs" and "bellwether attacks").  Id. at *1.  The Court determined that "the Syndicate committed all eleven attacks," "Iran's material support substantially contributed to the Syndicate's ability to do so," and Iran's support was the proximate cause of the deaths and injuries that formed the basis for the bellwether plaintiffs' claims.  Id. at *15; see id. at *41 ("[P]laintiffs' injuries were not only foreseeable: they were the intended result of Iran's support.").

The Court then determined that each bellwether plaintiff was entitled to recover under the FSIA's "private right of action against state sponsors of terrorism for plaintiffs who are United States nationals, members of the armed forces, government employees or contractors, or legal representatives of those people," which authorizes suits "'for personal injury or death caused by' acts including extrajudicial killing and hostage taking."  Id. at *41–42 (quoting 28 U.S.C. § 1605A(c)).  Immediate family members of victims—and functional equivalents of immediate family members—were entitled to recover "solatium awards," which offer compensation for "the mental anguish, bereavement, and grief that those with a close personal relationship to a decedent experience as the result of the decedent's death, as well as the harm caused by the loss of the decedent's society and comfort."  Id. (cleaned up).  On May 16, 2023, the Court held that additional plaintiffs associated with the bellwether attacks were entitled to recover solatium awards and awarded damages and prejudgment interest to each plaintiff associated with the bellwether attacks.  See Cabrera v. Islamic Republic of Iran, Civ. A. No. 19-3835 (JDB), 2023 WL 3496303 ("Cabrera II"), at *4–12 (D.D.C. May 16, 2023).

The Court also entered a separate Order adopting an administrative plan to "govern further proceedings as to the damages awards for the plaintiffs associated with Tranche 1 in this litigation." Order Adopting Admin. Plan Concerning Special Masters [ECF No. 128] ("Admin. Plan") at 1.  The Court instructed the special masters to assess each family-member plaintiff's standing under 28 U.S.C. § 1605A(c), which, as relevant here, requires each plaintiff to (1) be a U.S. national, and (2) "prove

that they are an immediate family member, or the functional equivalent, of an individual killed or physically injured." Admin Plan at 2–3. Then, the special masters would recommend findings of fact on "the scope of each plaintiff's compensatory damages . . . guided by the provisions of 28 U.S.C. § 1605A, this Court's [July 19, 2022] Memorandum Opinion, and any further orders that this Court may enter." Id. at 3 (cleaned up).

The Court appointed David L. Broom, Christopher A. Byrne, Professor Eric D. Green, Paul G. Griffin, Shelby R. Grubbs, Lester J. Levy, Dr. Susan Meek, Brad Pigott, Professor Stephen Allan Saltzburg, and Professor C. Jackson Williams as special masters. Order Appointing Special Masters [ECF No. 129]. The special masters submitted their reports on August 1, 2023. See Afghanistan-Based Pls.' Mot. For Default J. for Tranche 1 Pls. [ECF No. 231] ("Mot."), Exs. 1–10. The Court now considers the claims of 125 plaintiffs assigned to Special Master Broom, each of whom is associated with a service member who was killed in the attacks at issue.

## II.    Subject-Matter Jurisdiction and Liability[1]

This Court previously found that (1) a terrorist syndicate operated in Afghanistan during the relevant time period of 2008–2017; (2) Iran provided material support for that syndicate; and (3) the syndicate was responsible for each of the bellwether attacks in this case. Cabrera I, 2022 WL 2817730, at *6–27. The Court now finds that the syndicate was likewise responsible for the attacks against the U.S. servicemembers associated with the Tranche 1 Broom plaintiffs.

From at least 2006 to 2019, multiple terrorist groups—including the Taliban, the Haqqani Network, the Kabul Attack Network, and al-Qaeda—made up a terrorist "syndicate" in Afghanistan. The syndicate shared close strategic, tactical, and operational coordination, as well as a common goal: re-establishing the Islamic Emirate by driving the United States and its allies out of Afghanistan

---

[1] Under the FSIA, a court has personal jurisdiction over a defendant where the court has subject matter jurisdiction and the defendant has been served. GSS Grp., Ltd. v. Nat'l Port Auth., 680 F.3d 805, 811 (D.C. Cir. 2012) (citing 28 U.S.C. § 1330(b)). Plaintiffs successfully served Iran through the diplomatic process. Cabrera I, 2022 WL 2817730, at *33. Accordingly, so long as the Court has subject-matter jurisdiction over plaintiffs' claims, it also has personal jurisdiction over Iran.

through the killing and wounding of American troops.  Id. at *6.  Iran—a designated state sponsor of terrorism—provided material support to the Syndicate in the form of weapons, training, financial support, and safe haven.  Id. at *9–12.  In its earlier Opinion, the Court identified regions in which particular syndicate terrorist groups operated during specific time periods.  See id. at *13–15 (identifying Southern Afghanistan, Loya Paktia, Kabul Province, Eastern Afghanistan, North Central Afghanistan, Western Afghanistan, and Southeastern Afghanistan).  The Court now finds that the syndicate was responsible for each of the attacks associated with the Tranche 1 Broom plaintiffs.

The relevant attacks are as follows:

1.  November 2, 2007 Complex Attack, Uruzagan Province
2.  June 26, 2008 Complex Attack, Wardak Province
3.  August 22, 2008 IED Attack, Ghazni Province
4.  January 9, 2009 IED Attack, Zabul Province
5.  July 22, 2009 IED Attack, Zabul Province
6.  August 2, 2009 IED Attack, Wardak Province
7.  August 7, 2009 IED Attack, Wardak Province
8.  September 12, 2009 IED Attack, Wardak Province
9.  September 24, 2009 IED Attack, Zabul Province
10. October 1, 2009 Infantry Attack, Logar Province
11. November 13, 2009 IED Attack, Wardak Province
12. November 23, 2009 IED Attack, Khost Province
13. January 28, 2010 IED Attack, Uruzgan Province
14. May 6, 2010 Indirect Fire Attack, Wardak Province
15. May 14, 2010 Complex Attack, Logar Province
16. June 11, 2010 Complex Attack, Logar Province
17. June 23, 2010 Complex Attack, Logar Province
18. July 6, 2010 IED Attack, Zabul Province
19. July 14, 2010 IED Attack, Zabul Province
20. July 18, 2010 IED Attack, Zabul Province
21. August 31, 2010 IED Attack, Logar Province
22. November 27, 2010 Infantry Attack, Wardak Province
23. February 28, 2011 IED Attack, Wardak Province
24. August 3, 2011 IED Attack, Wardak Province
25. September 27, 2011 Indirect Fire Attack, Logar Province
26. April 22, 2012 IED Attack, Ghazni Province
27. July 8, 2012 IED Attack, Wardak Province
28. July 13, 2012 IED Attack, Zabul Province
29. July 22, 2012 Complex/IED Attack, Logar Province
30. September 26, 2012 Complex Attack, Logar Province
31. March 11, 2013 Insider Attack, Wardak Province
32. April 6, 2013 Suicide Attack, Zabul Province
33. July 23, 2013 Suicide Attack, Wardak Province

4

The Court has already held that syndicate terrorist groups "likely" or "very likely" maintained operational dominance in each of these provinces during the time of these attacks, with one exception: the April 6, 2013 attack in Zabul.  See id.  The Court previously found that the Taliban "very likely had operational dominance" in Zabul from 2008 to 2012, id.; the Court now credits Dr. Gartenstein-Ross's report that the Taliban "continued to demonstrate its operational dominance even after 2012 by committing numerous attacks in 2013," see Ex. 11 Expert Witness Report of Dr. Daveed Gartenstein-Ross (Apr. 3, 2023) [ECF No. 231-11] at 51.  The Court thus concludes that Iran is liable for each of the above-listed attacks.

**III.    Standing**

To satisfy the standing requirements of the FSIA's private right of action, each plaintiff must be a U.S. national (or otherwise meet certain criteria not relevant here) and must be an immediate family member, or the functional equivalent, of an individual killed or injured in a relevant attack. Admin Plan at 2–3 (citing 28 U.S.C. § 1605A(c)).  Special Master Broom determined that each plaintiff is a U.S. citizen and that each of these plaintiffs was an immediate family member, or the functional equivalent, of a victim killed in one of the above-listed attacks.

He thoroughly recounted the devastating impacts of the syndicate's attacks on the associated family-member plaintiffs, and the Court has no doubt that each associated family-member plaintiff suffered emotional distress as a result of the syndicate's attacks on their loved ones.  Thus, for the reasons set forth in Cabrera, 2023 WL 3496303, at *4–7, the Court is satisfied that—with one exception—each of the Tranche 1 Broom plaintiffs has met the standing requirements for the private cause of action in § 1605A(c) and is entitled to seek solatium damages under that provision.

As this Court explained in Cabrera II, "children born following terrorist attacks are not entitled to damages under the FSIA."  2023 WL 3496303, at *7 (citing cases); see also Davis v. Islamic

<u>Republic of Iran</u>, 882 F. Supp. 2d 7, 15 (D.D.C. 2012).[2]  Plaintiff A.M.P. was born three months after the attack that killed her father, PFC Michel Pridham Jr.  <u>See</u> Mot., Ex. A, Compendium of Non-Bellwether Pls.' Damages Decls. Provided to Special Master David L. Broom [ECF No. 231-1] ("Pls.' Decls.") at 517.  A.M.P.'s claims do not present any special circumstances that might warrant departure from this Court's prior approach.  Accordingly, A.M.P. lacks standing to bring a solatium claim under § 1605A(c), and the Court will dismiss her claims.

## IV.    Solatium Damages

Section 1605A of the FSIA authorizes family-member plaintiffs to seek solatium damages.  28 U.S.C. § 1605A(c).[3]  Solatium claims are "functionally identical to claims for intentional infliction of emotional distress," and are "intended to compensate persons for mental anguish, bereavement and grief that those with a close personal relationship to a decedent experience . . . as well as the harm caused by the loss of the decedent's society and comfort."  <u>Spencer v. Islamic Republic of Iran</u>, 71 F. Supp. 3d 23, 27 (D.D.C. 2014) (internal quotation marks omitted).  In granting these damages, the Court's "primary consideration is to ensure that 'individuals with similar injuries receive similar awards.'"  <u>Cabrera I</u>, 2022 WL 2817730, at *43 (quoting <u>Moradi v. Islamic Republic of Iran</u>, 77 F. Supp. 3d 57, 70 (D.D.C. 2015)).

Because solatium damages "are by their very nature unquantifiable," <u>Moradi</u>, 77 F. Supp. 3d at

---

[2] The Court thus dismissed the claims brought by K.E.F.V., who was born two months after the attack that killed her father, because she lacked standing to bring claims under the private right of action in § 1605A(c).  <u>Cabrera II</u>, 2023 WL 3496303, at *7.  On appeal, counsel for K.E.F.V. advocates—for the first time—that plaintiffs who are in utero at the time of an attack may recover solatium damages under the FSIA.  <u>See</u> Brief for Pl.-Appellant at 15–44, <u>Cabrera v. Islamic Republic of Iran</u>, No. 23-7076 (D.C. Cir. Dec. 22, 2023).  If the D.C. Circuit agrees that in-utero plaintiffs have standing under the FSIA, this Court would conclude that A.M.P. is entitled to an award in the amount of $2.5 million.  While A.M.P. has been deprived of her father's parental care and support, she has not suffered the same mental anguish as most plaintiffs who experienced the loss of a parent.  A 50% downward departure is thus appropriate here and maintains consistency among awards.  <u>See</u> <u>Goldstein v. Islamic Republic of Iran</u>, 383 F. Supp. 3d 15, 22–23 (D.D.C. 2019) (50% downward departure for brother born two days after attack).

[3] Section 1605 further authorizes economic damages, damages for pain and suffering, and punitive damages.  § 1605A(c).  The Court previously concluded that "awarding substantial punitive damages" is appropriate but will defer ruling on punitive damages until the compensatory damage awards of all plaintiffs in this case have been decided.  <u>Cabrera I</u>, 2022 WL 2817730, at *56–57.

72, this Court has looked to prior decisions for guidance and "endorsed" the <u>Peterson II</u> framework, which judges in this District rely upon as a benchmark of baseline awards for victims of terrorist attacks and their families, <u>Cabrera I</u>, 2022 WL 2817730, at *47 (citing <u>Peterson v. Islamic Republic of Iran</u> ("<u>Peterson II</u>"), 515 F. Supp. 2d 25, 52 (D.D.C. 2007)).  Under the <u>Peterson II</u> framework, spouses of deceased victims receive $8 million, parents and children of deceased victims receive $5 million, and siblings of deceased victims receive $2.5 million. <u>Peterson II</u>, 515 F. Supp. 2d at 52.  This Court has thus awarded qualifying plaintiffs the <u>Peterson II</u> baselines, granting upward and downward variances to certain plaintiffs based on individualized circumstances.  <u>See, e.g.</u>, <u>Cabrera II</u>, 2023 WL 3496303, at *9 (granting an upward adjustment where plaintiff experienced "particularly brutal suffering"); <u>id.</u> at *10 (varying downward for awards to older family members, whose amount of time suffering "is comparatively less than the suffering of other family-member victims").

Special Master Broom has considered the evidence presented by family-member plaintiffs and recommended damages awards.  Most of the recommendations are in line with the <u>Peterson II</u> baselines but some reflect modest variances.  The Court will adopt the recommendations of the Special Master except as outlined below.

### A. Upward Variances for Exceptionally Severe Harm

Because the <u>Peterson II</u> baseline awards "take into consideration the likelihood of serious detrimental effects from these events on families," <u>Pennington v. Islamic Republic of Iran</u>, Civ. A. No. 19-796 (JEB), 2022 WL 168261, at *3 (D.D.C. Jan. 19, 2022), <u>vacated in part</u>, 2022 WL 18814284 (D.D.C. May 3, 2022), courts normally only award upward departures for "an unusual circumstance beyond the ordinary anguish that results from losing a family member," <u>Selig v. Islamic Republic of Iran</u>, 573 F. Supp. 3d 40, 66 (D.D.C. 2021).  The Court now briefly describes a few plaintiffs who experienced unusual circumstances warranting upward departures from the <u>Peterson II</u> baselines.

Special Master Broom recommended awarding Mary Hilton (the wife of SFC Matthew Hilton) $9.6 million in solatium damages due to her "diagnosed PTSD and her described periodic treatment

therefor with the Veterans Administrat[ion]."  Mot., Ex. 1 [ECF No. 231-1] ("Broom Rep.") at *20–21.  The Court disagrees with Special Master Broom's recommendation of a 20% upward variance. Although Ms. Hilton experienced serious detrimental effects, courts "adhere[] closely to the Peterson II framework in assessing solatium damages," Cabrera I, 2022 WL 2817730, at *48, and the Peterson II framework considers such effects, see id. (declining to vary upward for spouse who suffered post-traumatic stress disorder ("PTSD")).  But the Court will grant a modest upward variance of 5%, due to the unique circumstance surrounding her husband's death.  Ms. Hilton, like her husband, served in the U.S. military, and deployed to Iraq in 2007.  Pls.' Decls. at 10.  Ms. Hilton was one month away from completing her deployment when SFC Hilton was deployed to Afghanistan.  Id.  SFC Hilton was killed one month after she returned home; because of their deployment timing, Ms. Hilton last saw her husband when she deployed in 2007.  Id.  Because of this unusual circumstance, the Court will award Ms. Hilton $8.4 million in solatium damages.

Special Master Broom also recommended awarding $9.6 million to Veronica Marie Adkinson, the wife of SSG Vinson Adkinson.  Broom Rep. at *244.  Ms. Adkinson credibly describes her multiple suicide attempts in the years following her husband's death.  Pls.' Decls. at 572.  The Court finds that given her multiple suicide attempts, the impact on Ms. Adkinson appears to be greater than that experienced by a spouse in a typical FSIA case.  Accordingly, the Court will award Ms. Adkinson $8.75 million in solatium damages.

Special Master Broom recommended an award of $6.25 million to Songmi Kietzmann, who was hospitalized after the death of her son, SPC Justin Horsley.  See Broom Rep. at *346; Pls.' Decls. at 833.  The Court finds that Ms. Kietzmann has experienced a greater-than-average impact, but that a 25% enhancement here strays too far from the Peterson II framework.  The Court will award her $5.5 million in solatium damages, which constitutes a 10% enhancement.

Special Master Broom recommended an upward variance of 20% for Ashley Michelle Harris, the twin sister of PFC Devon Harris.  Broom Rep. at *258–59; see Pls.' Decls. at 638.  The Court

acknowledges that Ms. Harris has experienced unique pain due to the death of her twin brother—particularly as it relates to their shared July 3 birthday—but finds that a 10% enhancement, rather than a 20% enhancement, is appropriate.  The Court will therefore award Ms. Harris $2.75 million in solatium damages.

Special Master Broom did not recommend an upward variance for Benjamin Gabriel Horsley, Broom Rep. at *347, but the Court finds it appropriate to award him a 10% enhancement as well.  Mr. Horsley is SPC Horsley's twin brother and faces greater hardships than typically expected for a sibling's death: he credibly describes that his "mother cries when she sees [his] face and hears [his] voice, as they remind her" of SPC Horsley.  Pls.' Decls. at 842.  Due to this circumstance, the Court will award Mr. Horsley $2.75 million in solatium damages.

### B. Older Family Members

The Court previously issued slight downward variances to older family-member plaintiffs whose amount of time suffering with the loss of their loved one was "comparatively less than the suffering of other family-member victims."  Cabrera I, 2022 WL 2817730, at *51 (20% downward variance for foster father who the Court estimated was "at least in his sixties" at the time of the attack); see also Cabrera II, 2023 WL 3496303, at *10 (20% downward variance for grandfather who was 69 years old at the time of grandson's death).  To maintain consistency among the awards of similarly situated individuals, the Court will vary downward for plaintiffs in comparable situations.[4]

The Court therefore concludes that it is appropriate to provide a 20% reduction to Annette Parrish, who was sixty-six years old when her grandson SSG Edward Bernard Smith died.[5]  Broom Rep. at *108.  The Court will award Ms. Parrish $4 million in solatium damages.  The Court will find similarly for the parents of CPL Christopher Coffland.  At the time of CPL Coffland's death, his

---

[4] Special Master Broom recommended the Peterson II baseline for each of the plaintiffs listed in Section III.B.

[5] Ms. Parrish was SSG Smith's functional equivalent of a mother.

9

mother, Antoinette Mary Francis Coffland, and his father, David Lee Coffland, were both seventy-five years old.  Broom Rep. at *133; Pls.' Decls. at 292, 300.  The Court will issue 20% downward departures for each and will award $4 million in solatium damages to Ms. Coffland and Mr. Coffland.

The Court will grant the same $4 million solatium awards to Michael Ramos Kisseloff and Milagros D. Kisseloff, who were seventy-three years old and seventy years old at the time of their son SGT Denis Kisseloff's death.  Broom Rep. at *172–73.  And the Court will also award $4 million in solatium damages to Tennyson Charles Harris, the father of PFC Harris, who was sixty-five years old when his son died.  Id. at *255–56.  Each of these awards maintains consistency with the awards given to similarly situated plaintiffs.

In addition to issuing downward departures for older family-member plaintiffs in Cabrera II, the Court made similar adjustments for the estates of family-member plaintiffs who suffered for shorter periods of time.  See id. at *10 (20% downward variance to estate of father who "passed away thirteen years [after the attack], which is only slightly longer than the time that" older family-member plaintiffs suffered).  The Court will issue the same downward departure to the estate of Gladys Del Valle Montanez.  Although Ms. Del Valle Montanez was only forty-eight years old when her son, PFC Gil Isai Morales Del Valle, was killed, she passed away in 2021, ten years after the attack.  See Broom Rep. at *284.  The Court does not wish to understate the suffering Ms. Del Valle Montanez endured after her son's death, but because she passed away ten years later, the amount of time she suffered is close to the amount of time the older family-member plaintiffs suffered.  The Court will therefore award her $4 million to maintain consistency among the awards.

### C.  Individuals with Less Close Relationships to Direct Victims

The Court previously held that "when determining solatium damages, it is necessary to consider whether a family-member plaintiff's relationship with a direct victim was further removed than traditionally expected."  Cabrera II, 2023 WL 3496303, at *10.  Circumstances courts consider include whether the family-member plaintiff lived with the victim, see id. ("Children who were living with

10

their parents are likely to feel the sting of loss more harshly than children who were not." (cleaned up)), and the time they had to develop their relationship, see id. at *11 ("S.B. never got to meet him or develop a relationship with him." (cleaned up)). The Court now addresses certain plaintiffs whose relationships with the victim were further removed than traditionally expected.

### 1. Children of Direct Victims

Special Master Broom recommended an upward variance of 25% for Brent Robinson, the stepson of SFC Hilton; the Court will instead issue a 10% downward departure. SFC Hilton met Mr. Robinson for the first time when Mr. Robinson was fifteen years old, became Mr. Robinson's stepfather when Mr. Robinson was eighteen years old, and was killed when Mr. Robinson was twenty-three years old. Pls.' Decls. at 17. Despite the limited number of years that they shared, Mr. Robinson credibly describes a "strong relationship" with SFC Hilton and refers to him as a "father figure." Id. at 18. Special Master Broom recommended an enhancement for Mr. Robinson due to "continuing distress," including "a belief that he suffers from PTSD, that he has vivid dreams of his father's death which prevent him from sleeping, a continuing belief that the Taliban took and have transmitted his father's body parts and other intrusive reminders of his father's violent death." Broom Rep. at *21.

But while the Court acknowledges the bond between Mr. Robinson and SFC Hilton, it is evident that Mr. Robinson's relationship with SFC Hilton was further removed than traditionally expected. Even though the two appeared to have quickly bonded after meeting, SFC Hilton did not raise Mr. Robinson. And in fact, despite considering SFC Hilton a father figure (which the Court does not doubt), Mr. Robinson's biological father was also present in his life. Pls.' Decls. at 18. The Court will only issue a downward departure of 10%, however, due to Mr. Robinson's evident grief and the unusual circumstance that Mr. Robinson believes his family has been receiving pieces of SFC Hilton's body parts over the years. Id. at 19. Accordingly, the Court will award Mr. Robinson $4.5 million in solatium damages.

The Court now discusses the minor children of SSG Rusty Christian. At the time of his death,

SSG Christian's son G.J.C. was eleven months old and his daughter T.M.C. was three years old.  Broom Rep. at *144.  Special Master Broom recommended an award of $3 million for G.J.C., and $4 million for T.M.C.  Id. at *144, *146.  The Court agrees with the awards Special Master Broom recommended but details its reasoning for clarity.

In its earlier Opinion, the Court applied a 40% downward variance for a three-month-old child and a 30% downward variance for a three-year-old child.  Cabrera II, 2023 WL 3496303, at *11. Consistent with that, the Court will vary downward by 40% for G.J.C. and will award him $3 million in solatium damages.  The Court will also vary downward by 30% for T.M.C., which would result in a $3.5 million award.  But the Court will then vary upwards for T.M.C., who has cut herself due to her distress over the loss of her father.  Pls.' Decls. at 339.  The Court will thus award her $4 million in solatium damages.

### 2. Parents of Direct Victims

While the Court previously considered whether a child plaintiff's relationship with a direct victim parent was further removed than traditionally expected, the Court considers the same factors when determining solatium awards for parent plaintiffs due to child victims.  The Court will now address plaintiffs for whom a downward departure is warranted due to their more attenuated parental relationship with the direct victim.[6]

The Court will vary downward for the following stepparent plaintiffs who—while acting as the "functional equivalent" of a parent—did not share as close a traditional child-parent relationship with the victim.  Tammy Renee Mays is SSG Chauncy Mays's stepmother and views SSG Mays as the "functional equivalent of a biological son."  Pls.' Decls. at 680–81.  Ms. Mays met SSG Mays when he was approximately thirteen years old and SSG Mays lived with Ms. Mays and her husband for a three-year period before his deployment.  Id. at 680–81.  While the Court acknowledges the seemingly

---

[6] Special Master Broom recommended the baseline award of $5 million for each plaintiff listed in Subsection III.C.2.

strong relationship between Ms. Mays and her stepson, it will vary downward by 30%, resulting in an award to Ms. Mays of $3.5 million in solatium damages.

The Court will issue greater departures for stepparents whose relationships appear further removed. Jane Giselman Sparks, for example, considers her stepson SSG Orion Sparks "the functional equivalent of [her] biological son," Pls.' Decls. at 893, and the victim's brother Erik corroborates the grief she suffered from SSG Sparks's death, see id. at 877. But because Ms. Sparks only lived with SSG Sparks approximately every other weekend for five years, id. at 893, the Court will vary downward by 50% and will award Ms. Sparks $2.5 million in solatium damages. The Court reaches the same conclusion for Jeanne M. Nichols, who became SPC Rob Nichols's stepmother when he was fifteen years old. See id. at 951. Although Ms. Nichols considers SPC Nichols the "functional equivalent of her biological son," SPC Nichols only lived with her and her husband on weekends and in the summer. Id. at 950–51. The Court thus applies the same downward departure of 50% and will award Ms. Nichols $2.5 million in solatium damages.

The Court next considers the claims of Rose Ann Crossman, who became SPC Wade Slack's stepmother when SPC Slack was only eight years old. The record does not clearly reflect how long SPC Slack lived with his stepmother or the status of their relationship. Nonetheless, the record contains evidence that Ms. Crossman considered SPC Slack "the functional equivalent of [her] biological son," Pls.' Decls. at 382, and that she "grieves to this day over losing a child she loved dearly," id. at 406, so the Court will award her $3 million in solatium damages.

The Court will also vary downward for biological parents who had significantly less custody of the direct victim. The Court first addresses David Reed, the father of SPC Jesse Reed. Mr. Reed describes a very close relationship with his son, with whom he lived full time until his divorce when SPC Reed was ten years old. Pls.' Decls. at 533–34. SPC Reed then lived primarily with his mother, though he saw Mr. Reed throughout the week and stayed with him on some weekends. Id. Due to the diminished time together, the Court finds that a 10% departure is appropriate and will grant Mr. Reed

$4.5 million in solatium damages.

Michael Christian, the father of SSG Christian, credibly describes a strong relationship with his son, but he stopped permanently living with SSG Christian three months after his birth, at which point SSG Christian only stayed with him every other weekend.  Pls.' Decls. at 355–56.  Although Mr. Christian remained present in his son's life, the Court finds it proper to award Mr. Christian $3.5 million in solatium damages (a 30% departure).  The Court will grant the same award to Clarence Joseph Metcalf, PFC Michael Metcalf's father.  Mr. Metcalf credibly describes a strong relationship with his son, but the record appears to reflect that PFC Metcalf lived solely with his mother between the ages of two and twenty-one.  Id. at 743–44, 751–52.  The Court will therefore vary downward by 30% and award Mr. Metcalf $3.5 million in solatium damages.  Finally, the Court will award Sorainya Harris (PFC Harris's mother) the same award of $3.5 million in solatium damages: although Ms. Harris credibly describes a close relationship with her son, she seemingly never had custody of him.  Id. at 596–97, 604–05.

### 3. Spouses of Direct Victims

The Court will briefly address one spouse for whom the Court finds a modest departure is warranted.  Diedre Marie Spencer was married to PFC Pridham for two days before he left to his post in Germany, and they spent two months together in Germany prior to his deployment.  Pls.' Decls. at 509.  Special Master Broom recommended granting the Peterson II baseline of $8 million and the Court does not wish to understate the "strong relationship" Ms. Spencer shared with her husband.  Id. at 508.  Given, however, the limited amount of time they shared between their wedding and PFC Pridham's death, the Court will issue a downward departure of 20% and will award Ms. Spencer $6.4 million in solatium damages.

### D. Peterson II Baselines

The Court now briefly describes three plaintiffs for whom Special Master Broom recommended upward enhancements of 20%, but for whom the Court has decided to award the Peterson II baseline

14

amounts.  The Court addresses each plaintiff in turn.  Amanda Granado, the daughter of SFC Alejandro Granado III, suffers from PTSD, anxiety, and panic attacks as a result of her father's death.  See Broom Rep. at *67.  The Court expresses its sympathy for Ms. Granado's continued suffering.  But although Ms. Granado credibly describes "serious detrimental effects," the Peterson II framework takes into consideration such effects.  Pennington, 2022 WL 168261, at *3.  Accordingly, the Court finds that a baseline award of $5 million in solatium damages aligns with the awards given to similarly situated plaintiffs.

Shannon Fenton, the sister of SGT Joshua Rimer, dropped out of college and postponed her wedding after her brother was killed.  See Broom Rep. at *55–56.  The Court notes that the record does not make clear whether Ms. Fenton later returned to college.  The record is clear, however, that Ms. Fenton did not permanently cancel her wedding, but merely postponed it.  See Pls.' Decls. at 88.  And even if Ms. Fenton never returned to college, she has not presented circumstances that make her situation unique compared to other family-member plaintiffs.  The Court will thus award her $2.5 million in solatium damages.

Melissa A. Pucino, the sister of SSG Matthew Pucino, has suffered "evident continuing emotional distress," since the death of her brother.  Broom Rep. at *413.  The Court acknowledges Ms. Pucino's deep suffering, but her emotional distress is the type of "serious detrimental effects" the Peterson II framework considers.  Pennington, 2022 WL 168261, at *3.  Because she has not demonstrated "an unusual circumstance beyond the ordinary anguish that results from losing a family member," Selig, 573 F. Supp. 3d at 66, granting a 20% enhancement would not maintain consistency among the awards.  The Court will instead award her $2.5 million in solatium damages.

The Court now addresses two plaintiffs for whom Special Master Broom considered recommending an upward variance, but ultimately concluded against such recommendation.  The Court agrees with Special Master Broom's recommendations not to grant a 20% upward enhancement for plaintiffs Samantha Shervon Williams and Zachary Douglas Sparks.  Samantha Shervon Williams is

the sister of PFC Clarence Williams III, who was killed in 2012.  Ms. Williams suffers from a mental disability and now "struggles with confusion over [PFC Williams]'s absence."  Pls.' Decls. at 795.  But without more evidence in the record "of her current circumstances or likeliness of future needs [with which] to differentiate the impact of this FSIA case [from] others," Broom Rep. at *323, the Court will only award Ms. Williams the <u>Peterson II</u> baseline of $2.5 million in solatium damages.

Finally, Special Master Broom considered granting a 20% enhancement to Zachary Douglas Sparks, the brother of SSG Sparks, given Sparks's credible description of the impacts of his brother's death, which included becoming homeless.  Broom Rep. at *362.  But the Court agrees that the "record is not specific enough" to differentiate his needs from those of other plaintiffs, <u>id.</u>, and concludes that Sparks has not presented the type of unusual circumstance that warrants an enhancement from the baseline award.  The Court will thus award Mr. Sparks $2.5 million in solatium damages.

\*       \*       \*

In sum, the Court adopts the recommendations of Special Master Broom, with the only deviations reflected above.

## V.       Prejudgment Interest

The Court previously concluded that "an award of prejudgment interest is appropriate" in this case.  <u>Cabrera I</u>, 2022 WL 2817730, at *55; <u>Cabrera II</u>, 2023 WL 3496303, at *12.  The Court calculated the bellwether plaintiffs' "interest amount by following the D.C. Circuit's recommendation in <u>Forman v. Korean Air Lines Co.</u>, 84 F.3d 446 (D.C. Cir. 1996)," <u>Cabrera I</u>, 2022 WL 2817730, at *55, and will use the same methodology here.  The prejudgment interest amounts for these associated plaintiffs are reflected in the Appendix table.

## <u>Conclusion</u>

For the foregoing reasons, the Court concludes that all but one of the plaintiffs considered by Special Master Broom has standing to bring claims under the private right of action in 28 U.S.C. § 1605A(c).  The Court will dismiss A.M.P.'s claims because she lacks standing as an after-born plaintiff.

The Court also largely adopts the special master's recommendations for compensatory damages to each eligible plaintiff, with the handful of modifications noted herein, and it will award prejudgment interest to each plaintiff as reflected in the attached Appendix.  A separate Order specifying each plaintiff's award will be issued on this date.

_____/s/_____

John D. Bates
United States District Judge

Dated: <u>February 29, 2024</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AUGUST CABRERA, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 19-3835 (JDB) |
| ISLAMIC REPUBLIC OF IRAN, | |
| Defendant. | |
| MARK ZAMBON, et al., | |
| Plaintiffs, | |
| v. | |
| ISLAMIC REPUBLIC OF IRAN, | Civil Action No. 18-2065 (JDB) |
| Defendant. | |

**APPENDIX**

This appendix includes the prejudgment interest multipliers calculated by the Court for the associated plaintiffs and a table specifying each plaintiffs' award before and after the addition of prejudgment interest. As it did previously in Cabrera I and Cabrera II, the Court will use the Federal Reserve's data for the average annual prime rate in each year from the date of the respective attacks through February 29, 2024.[1] Using the prime rates for the years from the date of the attack, and discounting for the percentage of the year elapsed at the time of each attack, yields the following multipliers:[2]

---

[1] This data is available on the Federal Reserve's website. Bd. of Governors of Fed. Reserve Sys., Data Download Program, https://www.federalreserve.gov/datadownload/Download.aspx?rel=H15&series (last accessed February 7, 2024).

[2] Specifically, the Court calculated these multipliers—using SFC Johnny Walls as an example—as follows. First, the Court multiplied $1.00 by the prime rate in 2007 (8.05%); discounted that amount to reflect that approximately 16.2% of the year remained after November 2, 2007; and added that amount to $1.00, for a result of $1.013093. The Court then

| Associated Direct Victims | Attack Date | Multiplier |
|---|---|---|
| Walls | November 2, 2007 | 1.955379 |
| Hilton; Palmateer | June 26, 2008 | 1.884794 |
| Studer | August 22, 2008 | 1.870234 |
| Hernandez; Parsons | January 9, 2009 | 1.835344 |
| Rimer | July 22, 2009 | 1.804615 |
| Granado | August 2, 2009 | 1.802873 |
| Evans | August 7, 2009 | 1.802080 |
| Allen; Cox | September 12, 2009 | 1.796379 |
| Smith | September 24, 2009 | 1.794477 |
| Adams | October 1, 2009 | 1.793369 |
| Coffland | November 13, 2009 | 1.786557 |
| Pucino | November 23, 2009 | 1.784973 |
| Christian | January 28, 2010 | 1.774659 |
| Slack | May 6, 2010 | 1.759624 |
| Kisseloff | May 14, 2010 | 1.758397 |
| Rodriguez | June 11, 2010 | 1.754101 |
| Madden | June 23, 2010 | 1.752260 |
| Pridham | July 6, 2010 | 1.750266 |
| Reed | July 14, 2010 | 1.749039 |
| Bennedsen | July 18, 2010 | 1.748425 |
| Adkinson; Alcaraz | August 31, 2010 | 1.741674 |
| Harris | November 27, 2010 | 1.728174 |
| Mays | February 28, 2011 | 1.714191 |
| Del Valle | August 3, 2011 | 1.691012 |
| Siercks | September 27, 2011 | 1.682840 |
| Metcalf | April 22, 2012 | 1.652508 |
| Stambaugh; Williams | July 8, 2012 | 1.641457 |
| Ristau | July 13, 2012 | 1.640739 |
| Horsley | July 22, 2012 | 1.639447 |
| Gollnitz; Sparks | September 26, 2012 | 1.629975 |
| Schad | March 11, 2013 | 1.606442 |
| Smedinghoff | April 6, 2013 | 1.602818 |
| Nichols; Welch | July 23, 2013 | 1.587765 |

Applying those multipliers, the Court concludes that plaintiffs are entitled to the following amounts as solatium or pain-and-suffering damages, plus prejudgment interest:

---

took that amount and multiplied it by the prime rate in 2008 (5.09%) and combined that amount with $1.013093, for a result of $1.064659.  The Court continued this iterative process through February 29, 2024, resulting in a total multiplier of 1.955379.  Because the attacks relevant to the associated plaintiffs were committed on thirty-three different dates, the Court repeated this process for each attack date.  To approximate the 2024 prime rate, the Court averaged the prime rates for the past six years—approximately 5.06%—and again discounted the interest to reflect that only a portion of the year has elapsed as of February 29, 2024.  See Cabrera I, 2022 WL 2817730, at *55 n.46 (applying same methodology).

| Plaintiff | Pain and Suffering or Solatium Damages | Compensatory Damages Plus Prejudgment Interest |
|---|---|---|
| Harvey Lane Walls | $2,500,000 | $4,888,448 |
| Mary Hilton | $8,400,000 | $15,832,270 |
| Brent C. Robinson | $4,500,000 | $8,481,573 |
| Jeanine Hilton | $2,500,000 | $4,711,985 |
| Christopher Alexander Palmateer | $2,500,000 | $4,711,985 |
| Marjorie Elizabeth Vail | $2,500,000 | $4,711,985 |
| Crystal Dawn DeLeo | $2,500,000 | $4,675,585 |
| Jessie Hernandez | $5,000,000 | $9,176,720 |
| Cathy Ann Parsons | $5,000,000 | $9,176,720 |
| Garland Richard Parsons | $5,000,000 | $9,176,720 |
| Donna Jean Rimer | $5,000,000 | $9,023,075 |
| James Howard Rimer | $5,000,000 | $9,023,075 |
| Shannon Danielle Fenton | $2,500,000 | $4,511,538 |
| Alejandro Olan Granado IV | $5,000,000 | $9,014,365 |
| Hasson Ponce Granado | $5,000,000 | $9,014,365 |
| Amanda Christine Granado | $5,000,000 | $9,014,365 |
| Larissa Ann Barnhart | $2,500,000 | $4,505,200 |
| Brittany Evans | $2,500,000 | $4,505,200 |
| Crystal Nicole Evans | $2,500,000 | $4,505,200 |
| Jonathan Dewayne Rogers | $2,500,000 | $4,505,200 |
| Jerry Randall Evans Sr. | $5,000,000 | $9,010,400 |
| Amy Lynette Allen | $8,000,000 | $14,371,032 |
| Daniel Bruce Allen | $5,000,000 | $8,981,895 |
| Rama Goodrich Allen | $2,500,000 | $4,490,948 |
| Kim B. Cox | $5,000,000 | $8,981,895 |
| Sharon J. Cox | $5,000,000 | $8,981,895 |
| Shannon Butler | $2,500,000 | $4,490,948 |
| Jamie Smith | $8,000,000 | $14,355,816 |
| DeAnndrea Luney | $5,000,000 | $8,972,385 |
| Deiontay Laundreek Welch | $5,000,000 | $8,972,385 |
| Craig Anthony Smith | $2,500,000 | $4,486,193 |
| Thelma Latrice Smith | $2,500,000 | $4,486,193 |
| Steven Flowers Jr. | $2,500,000 | $4,486,193 |
| Annette Parrish | $4,000,000 | $7,177,908 |
| Jalane Adams | $5,000,000 | $8,966,845 |
| Peter Adams | $5,000,000 | $8,966,845 |
| Amanda Boone | $2,500,000 | $4,483,423 |
| Antoinette Mary Francis Coffland | $4,000,000 | $7,146,228 |
| David Lee Coffland Sr. | $4,000,000 | $7,146,228 |

| Plaintiff | Pain and Suffering or Solatium Damages | Compensatory Damages Plus Prejudgment Interest |
|---|---|---|
| Laurie Ann Bartlett | $2,500,000 | $4,466,393 |
| Karen Ann Bresnahan | $2,500,000 | $4,466,393 |
| Amber Jean Rogers | $8,000,000 | $14,197,272 |
| G.J.C. | $3,000,000 | $5,323,977 |
| T.M.C. | $4,000,000 | $7,098,636 |
| Donna Ball | $5,000,000 | $8,873,295 |
| Michael Christian | $3,500,000 | $6,211,307 |
| James Franklin Ball | $4,000,000 | $7,098,636 |
| Michael Aaron Christian | $3,500,000 | $6,211,307 |
| Rose Ann Crossman | $3,000,000 | $5,278,872 |
| Andrew Forester Slack | $2,500,000 | $4,399,060 |
| Jesse Robert Slack | $2,500,000 | $4,399,060 |
| Jonathan Hunter Slack | $2,500,000 | $4,399,060 |
| Lauren Rachel Slack | $2,500,000 | $4,399,060 |
| Jessica Jean Cook | $2,500,000 | $4,399,060 |
| Aleksandr Cade Kisseloff | $5,000,000 | $8,791,985 |
| Michael Ramos Kisseloff | $4,000,000 | $7,033,588 |
| Milagros D. Kisseloff | $4,000,000 | $7,033,588 |
| Leslie Rodriguez | $8,000,000 | $14,032,808 |
| Raven George | $5,000,000 | $8,770,505 |
| Martin E. Madden | $5,000,000 | $8,761,300 |
| Pamela J. Madden | $5,000,000 | $8,761,300 |
| Lindsey R. Madden | $2,500,000 | $4,380,650 |
| Martin P. Madden | $2,500,000 | $4,380,650 |
| Diedre Marie Spencer | $6,400,000 | $11,201,702 |
| Heather L. Reed | $8,000,000 | $13,992,312 |
| David Reed | $4,500,000 | $7,870,676 |
| Tracy Bennedsen | $5,000,000 | $8,742,125 |
| Scott Bennedsen | $5,000,000 | $8,742,125 |
| Jamie Johanna Coates | $2,500,000 | $4,371,063 |
| Veronica Marie Adkinson | $8,750,000 | $15,239,648 |
| Alma Murphy | $5,000,000 | $8,708,370 |
| Paul Murphy | $5,000,000 | $8,708,370 |
| Tennyson Charles Harris | $4,000,000 | $6,912,696 |
| Sorainya Harris | $3,500,000 | $6,048,609 |
| Felicia Ann Harris | $5,000,000 | $8,640,870 |
| Tiffany Dotson | $2,500,000 | $4,320,435 |
| David L. Parker | $2,500,000 | $4,320,435 |
| Ashley Michelle Harris | $2,750,000 | $4,752,479 |

| Plaintiff | Pain and Suffering or Solatium Damages | Compensatory Damages Plus Prejudgment Interest |
|---|---|---|
| Michael Rufus II | $2,500,000 | $4,320,435 |
| Stephanie Rufus | $2,500,000 | $4,320,435 |
| Alyson Overman Rodgers | $5,000,000 | $8,570,955 |
| Thomas Pierce Mays | $5,000,000 | $8,570,955 |
| Tammy Renee Mays | $3,500,000 | $5,999,669 |
| Cody Cheyenne Mays | $2,500,000 | $4,285,478 |
| Estate of Gladys Del Valle Montanez | $4,000,000 | $6,764,048 |
| Renes Perez | $5,000,000 | $8,455,060 |
| Kiara Crystal Perez Del Valle | $2,500,000 | $4,227,530 |
| Georganne M. Siercks | $8,000,000 | $13,462,720 |
| Gage Siercks | $6,000,000 | $10,097,040 |
| G.S. | $4,000,000 | $6,731,360 |
| Kimberly Metcalf | $5,000,000 | $8,262,540 |
| Clarence Joseph Metcalf | $3,500,000 | $5,783,778 |
| Mitchell L. Stambaugh | $5,000,000 | $8,207,285 |
| Talisa Shervon Williams | $5,000,000 | $8,207,285 |
| Clarence Williams Jr. | $5,000,000 | $8,207,285 |
| Abrill Renee Williams | $2,500,000 | $4,103,643 |
| Samantha Shervon Williams | $2,500,000 | $4,103,643 |
| Randy Ristau | $5,000,000 | $8,203,695 |
| Suzanne Ristau | $5,000,000 | $8,203,695 |
| Christopher Powers | $2,500,000 | $4,101,848 |
| Halie Ristau | $2,500,000 | $4,101,848 |
| Songmi Kietzmann | $5,500,000 | $9,016,959 |
| Benjamin Gabriel Horsley | $2,750,000 | $4,508,479 |
| John Gregory Horsley | $2,500,000 | $4,098,618 |
| Kirk Andrew Gollnitz | $2,500,000 | $4,074,938 |
| Jan Marie Hurnblad Sparks | $5,000,000 | $8,149,875 |
| Erik Lee Sparks | $2,500,000 | $4,074,938 |
| Gary Lee Sparks | $5,000,000 | $8,149,875 |
| Jane Gieselman Sparks | $2,500,000 | $4,074,938 |
| Zachary Douglas Sparks | $2,500,000 | $4,074,938 |
| Colleen Whipple | $5,000,000 | $8,032,210 |
| Mary Beth Smedinghoff | $5,000,000 | $8,014,090 |
| Thomas John Smedinghoff | $5,000,000 | $8,014,090 |
| Mark T. Smedinghoff | $2,500,000 | $4,007,045 |
| Bruce K. Nichols | $5,000,000 | $7,938,825 |
| Jeanne M. Nichols | $2,500,000 | $3,969,413 |

| Plaintiff | Pain and Suffering or Solatium Damages | Compensatory Damages Plus Prejudgment Interest |
|---|---|---|
| M.G.N. | $2,500,000 | $3,969,413 |
| Lorria Welch | $5,000,000 | $7,938,825 |
| Barry Welch | $5,000,000 | $7,938,825 |
| Zackary Welch | $2,500,000 | $3,969,413 |
| Kathryn Mary Pucino | $5,000,000 | $8,924,865 |
| Albert W. Pucino Jr. | $5,000,000 | $8,924,865 |
| Lisa M. Haglof | $2,500,000 | $4,462,433 |
| Melissa A. Pucino | $2,500,000 | $4,462,433 |

/s/

John D. Bates
United States District Judge

Dated: February 29, 2024